# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FHAZZ LLC, *et al.*,<br><br>　　　　*Plaintiffs*,<br><br>　　v.<br><br>JOSEPH B. EDLOW, *et al.*,<br><br>　　　　*Defendants*.[1] | No. 25-cv-2219 (DLF) |

## <u>MEMORANDUM OPINION</u>

Fhazz LLC and Asad Ali bring this action against the Director of U.S. Citizenship and Immigration Services (USCIS), the Secretary of Homeland Security, the USCIS Deputy Associate Director of Adjudications, and the Attorney General of the United States, to set aside the denial of their I-129 petition for E-2 visa status. Before the Court is the defendants' Motion to Transfer and Dismiss, Dkt. 10, and the parties' supplemental briefing on that motion, *see* June 11, 2026 Minute Order; Dkt. 16; Dkt. 17. For the reasons that follow, the Court will grant the motion to transfer the case to the Western District of North Carolina and deny without prejudice the motion to dismiss with leave to refile.[2]

---

[1] Consistent with Federal Rule of Civil Procedure 25(d), the current Director's name has been substituted.

[2] The defendants filed a combined motion to transfer and dismiss. *See* Defs.' Mot., Dkt. 10. "[W]hen courts adjudicate combined motions to transfer and motions to dismiss in application-specific immigration cases . . . they routinely address only the motion to transfer and deny without prejudice the motion to dismiss so that the defendants may refile it, if appropriate, after the approved transfer has occurred." *Roh v. USCIS*, No. 21-cv-1291, 2021 WL 5050071, at *1 n.1 (D.D.C. Nov. 1, 2021). The defendants ask the Court to consider the transfer motion first. *See* Defs.' Mot. 10. The Court will therefore consider only the motion to transfer and will deny the motion to dismiss without prejudice and with leave to refile a Rule 12 motion in the transferee court as appropriate.

## I. BACKGROUND[3]

Asad Ali, a Pakistani national, originally entered the United States on a B-2 visitor visa. Compl. ¶ 14, Dkt. 1.[4] Ali's visitor visa status was valid through December 10, 2023. *Id.* ¶ 15. Prior to the expiration of his visitor visa, Ali and Fhazz LLC contracted with someone they believed to be an attorney to file an I-129 Petition for a Nonimmigrant E-2 visa. *Id.* ¶ 16. The plaintiffs allege that they later discovered that this individual was not actually an attorney and had provided false information about the status of their petition. *Id.* ¶¶ 16, 17. The plaintiffs, through a legitimate attorney, filed an I-129 petition on March 24, 2025, *id.* ¶ 18, which was untimely because it was submitted after Ali's B-2 visa had expired, *id.* ¶¶ 15, 19–22. USCIS sent the plaintiffs a Notice of Intent to Deny (NOID) in April 2025 requesting evidence concerning this delay in filing the petition. *Id.* ¶ 19. The plaintiffs responded to the NOID providing information about the purported fraud. *Id.* ¶ 20. On May 20, 2025, USCIS denied the plaintiffs' I-129 petition because an unreasonable amount of time had passed between their discovery of the fraudulent activity and the filing of the petition. *Id.* ¶¶ 21, 22.

The plaintiffs reside in Asheville, North Carolina, located in the Western District of North Carolina. Compl. ¶¶ 2, 3; Defs.' Mot. 1; Pls.' Opp'n 3, Dkt. 11. The Secretary of Homeland Security and the Attorney General of the United States are residents of the District of Columbia for official capacity purposes. Compl. ¶¶ 5, 7; Defs.' Mot. 1. USCIS's headquarters and

---

[3] These facts are drawn from the complaint and certain materials outside the pleadings. *See Chauhan v. Napolitano*, 746 F. Supp. 2d 99, 102 (D.D.C. 2010) (courts may consider materials outside the pleadings when considering a motion to transfer) (citing *Starnes v. McGuire*, 512 F.2d 918, 933–34 (D.C. Cir. 1974)).

[4] The plaintiffs' complaint duplicates paragraph numbers 11–15. The Court here refers to the paragraphs as they are numbered in that document, but notes that it is referencing allegations under "Statement of Case." *See* Compl. 6.

leadership are in Camp Springs, Maryland, in the District of Maryland. Defs.' Mot. 2. It is unclear from the complaint where USCIS Deputy Associate Director of Adjudications John M. Allen is located, Compl. ¶ 6, and the plaintiffs "studiously avoid[] mentioning where [their] petition was processed," *Melnattur v. USCIS*, No. 20-cv-3013, 2021 WL 3722732, at *5 (D.D.C. Aug. 23, 2021); *see* Compl. ¶¶ 14–23. But it is clear from the defendants' motion briefing, *see* Defs.' Mot. 1; Defs.' Suppl. Br. 1–2, Dkt. 17, which the plaintiffs did not contest, *see* Pls.' Suppl. Br. 2–3, Dkt. 16, that the plaintiffs' petition was adjudicated and denied at the California Service Center in Tustin, California, in the Central District of California.[5]

## II.    LEGAL STANDARD

The Court may transfer a case to another venue where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a). When considering a motion to transfer under § 1404, the Court considers two questions: Could the plaintiff have sued in the transferee court?  And, if so, should the suit have been brought in that court?  *See McAfee, LLC v. USCIS*, No. 19-cv-2981, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019) (citing *Gyau v. Sessions*, No. 18-cv-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018)). "If the Court answers yes to both, transfer is proper."  *Id.*[6]  The movant bears the burden of justifying transfer.  *Bourdon v. DHS*, 235 F. Supp. 3d 298, 303 (D.D.C. 2017).

---

[5] The plaintiffs assert that "Service Center Decisions are national and not local, [and] there is no California specific factual investigation and the relevant decision makers are not physically in California," Pls.' Suppl. Br. 3, but the defendants disagree, *see* Defs.' Suppl. Br. 1–2.  The Court need not resolve this dispute for this motion.

[6] There is some disagreement among judges in this district about whether a court must first address the propriety of venue in the District of Columbia when considering a § 1404 motion.  *Compare Liu v. Mayorkas*, 737 F. Supp. 3d 1, 3–5 (D.D.C. 2024) (concluding that the court must first assess propriety of the venue in the transferor district before evaluating § 1404 factors), *with Claros v. Cowan*, No. 21-cv-609, 2021 WL 1820209, at *1 (D.D.C. May 6, 2021) ("Although Plaintiffs and

If venue is proper in another district under the general venue statute, 28 U.S.C. § 1391, the first question is answered in the affirmative. In answering the second question, the Court must balance a set of public and private interests and decide whether they favor transfer, and, if so, to which district. *See Gyau*, 2018 WL 4964502, at *1. Public interest factors include: (1) "each court's relative congestion"; (2) "the transferee court's familiarity with the governing laws"; and (3) "the local interest in resolving the controversy." *Id.* (citation modified). Private interest factors include: (1) "the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants"; (2) "the defendants' choice of forum"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; (5) "the ease of access to sources of proof"; and (6) "the convenience of the parties." *Roh v. USCIS*, No. 21-cv-1291, 2021 WL 5050071, at *2 (D.D.C. Nov. 1, 2021) (citation modified) (quoting *Bourdon*, 235 F. Supp. 3d at 305).

## III.   ANALYSIS

Although the defendants initially requested transfer to the Western District of North Carolina, the plaintiffs' home district, to "maintain[] important consistency [with] materially identical cases," *Melnattur*, 2021 WL 3722732, at *9 n.7, the Court requested supplemental briefing to determine whether a transfer to the Central District of California, where the plaintiffs'

---

Defendants disagree about whether venue is proper in this District, the Court need not wade into that controversy today."). The Court need not resolve this dispute. Venue in the District of Columbia appears to be facially proper under 28 U.S.C. § 1391(e)(1)(A). *See Mahmoud v. DHS*, No. 25-cv-4454, 2026 WL 1431107, at *2 n.4 (D.D.C. May 21, 2026) (concluding the same given DHS Secretary named as defendant). And, in any event, the § 1406 inquiry would be "essentially identical to that under § 1404(a)," *Melnattur*, 2021 WL 3722732, at *3 n.4, and under that analysis the Court would transfer to the Western District of North Carolina for the same reasons stated in this opinion.

petition was adjudicated, would be appropriate.  *See* June 11, 2026 Minute Order.  In their supplemental briefing, the plaintiffs opposed transfer to the Central District of California, Pls.' Suppl. Br. 1, while the defendants supported transfer to either the Central District of California or the Western District of North Carolina, Defs.' Suppl. Br. 1.  Accordingly, the Court will consider the interests served by a transfer from the District of Columbia and whether those interests weigh in favor of transferring this case to the Central District of California or the Western District of North Carolina.

> A.      **This Case Could Have Been Brought in the Central District of California or the Western District of North Carolina**

The plaintiffs' claims could have been brought either in the Central District of California or the Western District of North Carolina under 28 U.S.C. § 1391(e)(1).  *See* Defs.' Suppl. Br. 1. Because the plaintiffs bring suit against federal employees acting in their official capacities, venue is proper in any district where "a defendant in the action resides"; "a substantial part of the events . . . giving rise to the claim occurred"; or where the plaintiffs reside if no real property is involved.  28 U.S.C. § 1391(e)(1).  Venue would therefore be proper in the Western District of North Carolina because the plaintiffs reside in that district.  Compl. ¶¶ 2, 3.  Venue would also be proper in the Central District of California because a substantial part of the events giving rise to the claim—*i.e.*, the adjudication and denial of the petition—occurred at the USCIS California Service Center in that district.  Defs.' Mot. 1; Defs.' Suppl. Br. 1–2; Pls.' Suppl. Br. 2–3.

> B.      **The Public and Private Interest Factors Weigh in Favor of Transfer to the Western District of North Carolina**

>> 1.      *Public Interest Factors*

Two of the public interest factors are neutral, and one favors transfer.

First, the District of Columbia, the Western District of North Carolina, and the Central District of California all face congested dockets.  *See U.S. District Courts—Combined Civil and*

*Criminal Federal Court Management Statistics*, U.S. Cts., at "California Central," "District of Columbia," and "North Carolina Western" (Mar. 31, 2026), https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables. While the Central District of California has the highest number of cases pending per judge (590), both the District of Columbia and the Western District of North Carolina also have significant caseloads—476 and 381 on average per judge, respectively. *See id.* The plaintiffs correctly point out that the District of Columbia has a lower number of total pending cases (7,138) compared to the Central District of California (16,531), though the Western District of North Carolina has a significantly lower amount (1,904). *See id.* But the Central District of California has the lowest median time from filing to disposition in civil cases—3.8 months compared to 5.8 months in Western District of North Carolina and 7.3 months in the District of Columbia—suggesting a lack of congestion. *See id*. "[W]hen statistics regarding relative congestion are mixed, this factor should be deemed as neutral." *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 336 (D.D.C. 2020) (citing *McAfee*, 2019 WL 6051559, at *1).

Second, because federal law governs this case and federal district courts are "equally familiar" with applying it, that factor is also neutral. *McAfee,* 2019 WL 6051559, at *1 (citing *Gyau*, 2018 WL 4964502, at *2).

But the third factor, the local interest, weighs strongly in favor of transfer. This factor is "perhaps most important amongst the public factors," *Wolfram Alpha*, 490 F. Supp. 3d at 338, because "courts have a local interest in having localized controversies decided at home, including even controversies requiring judicial review of an administrative decision," *McAfee*, 2019 WL 6051559, at *1 (citation modified) (quoting *Gyau*, 2018 WL 4964502, at *2). In assessing this factor, courts look to "where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy; whether the controversy

6

has some national significance; and whether there was personal involvement by a District of Columbia official." *Melnattur*, 2021 WL 3722732, at *8 (citation modified) (quoting *Bourdon*, 235 F. Supp. 3d at 308).

At its core, this case is a localized dispute challenging the results of an individual adjudication of an immigration visa conducted by a USCIS Service Center, not a challenge against some broad federal policy set by agency leadership. The plaintiffs ultimately ask this Court to order USCIS officials to reconsider the timeliness of their I-129 petition given the plaintiffs' unique circumstances of being the victims of a fraudulent attorney. Compl. ¶¶ 14–31. The requested relief here will not, as the plaintiffs contend, "affect how federal officers carry out duties nationally." Pls.' Opp'n 5. The mere involvement of a federal agency "overseeing the administrative process," *Bourdon*, 235 F. Supp. 3d at 307 (citation modified), that is implemented by a service center does not create a controversy of "national significance," *id.* at 308; *see Wolfram Alpha*, 490 F. Supp. 3d at 339 n.11 (finding no national significance where the "[p]laintiff's allegations on the merits of the case revolve around review of his petition specifically and the administrative record addressing the particular facts raised therein, not a broader policy or mass review of agency decisions"). And the plaintiffs do not allege any direct "personal involvement by a District of Columbia official," *id.* at 338 (quoting *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 84 (D.D.C. 2009)), beyond general agency management and administrative oversight, *see* Compl. ¶¶ 4–7, 14–23. That allegation alone is not enough to generate local interest in the District of Columbia. *See MVP Sports, Inc. v. Cissna*, 19-cv-742, 2020 WL 5816239, at *2 (D.D.C. Sept. 30, 2020) (citation modified) ("[I]t is well settled that naming the director of an agency headquartered in this district does not alone anchor venue in the District of Columbia."). Furthermore, the District

of Columbia is neither the plaintiffs' home district, nor is it the district where the challenged actions occurred. Compl. ¶¶ 4–7.

The Central District of California is the "location of the controversy." *Melnattur*, 2021 WL 3722732, at *8; *see* Defs.' Mot. 1; Defs.' Suppl. Br. 1–2. The plaintiffs' complaint focuses on the legality of the processing, adjudication, and denial of their I-129 petition by USCIS Service Center employees. *See* Compl. ¶¶ 4–7, 14–23; Defs.' Suppl. Br. 1–2. This connection to California is "particularly clear by the relief plaintiff seeks: an order declaring events occurring in [California] unlawful and compelling USCIS employees in [California] to take new actions in [California]." *Melnattur*, 2021 WL 3722732, at *8; *see Ghaleb*, 2025 WL 2255083, at *2 (transferring to Central District of California rather than plaintiffs' home district where plaintiffs' complaint "focuse[d] on the legality of processing and adjudication by USCIS employees" in a Service Center). While the plaintiffs note that the digital agency record can be reviewed anywhere, Pls.' Suppl. Br. 2–3, "[s]imply because the review of an administrative record can take place anywhere (including here) does not mean that the local district does not have an interest in the controversy," *Wolfram Alpha*, 490 F. Supp. 3d at 339.

The Western District of North Carolina also has a compelling local interest in this case as the plaintiffs' home district and because the challenged action "directly affect[s]" a resident of and business in the district. *Bourdon*, 235 F. Supp. 3d at 308; *see Melnattur*, 2021 WL 3722732, at *8; *Wolfram Alpha*, 490 F. Supp. 3d at 339 (transferring to plaintiff's home forum because "nearly all the impacts of [the USCIS action] and the outcome of [the] action will be felt most strongly in [plaintiff's home district]").

While the Central District of California and Western District of North Carolina have a clear local interest, the District of Columbia has no significant local interest in this case other than the plaintiffs' suing agency leaders who reside here.

> 2.     *Private Interest Factors*

The private interest factors also weigh in favor of transfer.

The plaintiffs maintain that the District of Columbia is their preferred forum.  *See* Pls.' Suppl. Br. 1–3.  The defendants originally requested transfer to the Western District of North Carolina, Defs.' Mot. 1, but agree that the Central District of California would also be a proper transferee forum, Defs.' Suppl. Br. 1.  Considering the weight of the private interests, the Court finds that transfer to the Western District of North Carolina is most appropriate because the private interest factors weigh in favor of transfer and the plaintiffs certainly "cannot object to venue in [their] home forum." *Wolfram Alpha*, 490 F. Supp. 3d at 340.

First, parties' respective forum choices weigh in favor of transfer.  While the plaintiffs' choice of forum is ordinarily entitled to significant deference, that deference is at its "nadir when the plaintiff[s'] forum choice lacks meaningful ties to the controversy and has no particular interest in the parties or subject matter." *Melnattur*, 2021 WL 3722732, at *4 (citation modified).  Though the plaintiffs reside in North Carolina, they chose to bring this suit several hundred miles away in a district where their I-129 petition was neither handled nor adjudicated.  The District of Columbia, however, "lacks meaningful ties" to this controversy between North Carolina plaintiffs and the agency officials at the California Service Center who adjudicated and denied the plaintiffs' petition. *Id*.  The defendants' choice of forum is given deference when they can "establish that the added convenience and justice of litigating in their chosen forum overcomes any deference" owed to plaintiffs' choice of venue. *Id.* at *5.  Because the plaintiffs' choice of forum is given minimal

deference here, and the defendants have selected the plaintiffs' home forum as one of their preferred transferee districts, these two factors lean in favor of transfer to the Western District of North Carolina. *See Wolfram Alpha*, 490 F. Supp. 3d at 332–33.

Second, the location where the claim arose counsels in favor of transfer. This factor is "first among equals when weighing the private interest factors," and is of "predominant importance." *Melnattur*, 2021 WL 3722732, at *5 (citation modified) (citing *Bourdon*, 235 F. Supp. 3d at 305). "Transfer is favored when the material events that form the factual predicate of [the plaintiffs'] claim did not occur in [their] chosen forum." *Id.* (citation modified) (quoting *Aishat v. DHS*, 288 F. Supp. 3d 261, 269 (D.D.C. 2018)). In APA cases, the underlying claim generally arises "where the decisionmaking process occurred." *Id.* (citation modified) (quoting *McAfee*, 2019 WL 6051559, at *1). The decisionmaking process for "adjudicating visa applications occurs in USCIS service centers around the country." *Id.* (citation modified) (quoting *Pasem v. USCIS*, No. 20-cv-344, 2020 WL 2514749, at *3 (D.D.C. May 15, 2020). When a suit "challenges only the handling, adjudication, and denial of [the plaintiffs'] petition," *id.*, the claims generally arise in the district of the service center that handled, adjudicated, and denied that petition, *id.*

The plaintiffs argue in their opposition that their claims arose in the District of Columbia because of the "oversight roles in federal immigration administration" of the Secretary of Homeland Security and the Attorney General and assert that this controversy "potentially implicate[s] broader policy considerations, even if [the] underlying file was handled elsewhere." Pls.' Opp'n 5. "[C]onclusory assertions that appear for the first time in an opposition to a motion to transfer" will not be credited. *Melnattur*, 2021 WL 3722732, at *5. Moreover, the plaintiffs' only allegations in the complaint that connect their claims to this district are their descriptions of

the parties, which allege that the Secretary of Homeland Security and Attorney General have general oversight over the agencies charged with processing their petition and administering immigration laws. Compl. ¶¶ 5, 7. There are no allegations in the complaint that otherwise connect their claim to this district. *See id.* ¶¶ 14–23, 24–30. "In the absence of any actual allegations of case-specific direction by D.C.-based officials in the complaint," the claims at issue here simply did not arise in the District of Columbia. *Melnattur*, 2021 WL 3722732, at *5 (citation modified).

While the plaintiffs cite the USCIS policy manual, *see* Compl. ¶¶ 28–30, they allege only that this policy was improperly applied by the USCIS staff who adjudicated and denied their petition, *id.* ¶ 30, and do not challenge an "agency polic[y], practice[], or oversight by D.C. resident officials," Pls.' Opp'n 8. The plaintiffs do not challenge "the validity or existence of any USCIS rule" promulgated in the District of Columbia. *Wei Lai Dev. LLC v. USCIS*, No. 21-cv-887, 2021 WL 2073403, at *4 (D.D.C. May 24, 2021). Instead, they merely "challeng[e] the decision rendered by the [California Service Center] to deny their petition." *Id.* The plaintiffs' efforts to keep this case in the District of Columbia by "recasting local determinations as broad policy directives" and "naming high government officials as defendants" with "no allegations . . . that anyone in the District of Columbia even knew about, let alone participated in, the adjudication of [their] petition" is a clear attempt to "manufacture venue." *Melnattur*, 2021 WL 3722732, at *5 (citation modified). *Compare id.*, *with* Pls.' Suppl. Br. 2 ("Plaintiffs' selection of this District is entitled to weight, particularly where the suit includes high-ranking federal officials and implicates broader federal administration and policy interests centered in or tied to Washington, D.C.").

Third, on the location of witnesses and access to proof, the plaintiffs state that they do not seek discovery outside the administrative record, nor do they intend to call witnesses. Pls.' Suppl.

11

Br. 3.  In addition, USCIS has digitized its filing system, meaning that any administrative record is easily transferable.  *See* Pls.' Suppl. Br. 3; *Wolfram Alpha*, 490 F. Supp. 3d at 333–34 (citing *Taylor v. Shinseki*, 13 F. Supp. 3d 81, 90 (D.D.C. 2014)).  Because this administrative review case will be decided on an easily transferable administrative record, "the weight of [the location of evidence and witnesses] is light."  *Wolfram Alpha*, 490 F. Supp. 3d at 334.

Finally, considering the convenience of the parties, the Western District of North Carolina, the plaintiffs' home district, is the most convenient district for the plaintiffs.  *See Wolfram Alpha*, 490 F. Supp. 3d at 333 ("Venue is convenient where parties are located."); *Sandvik Mining & Constr. USA, LLC v. Garland,* No. 21-cv-992, 2021 WL 4775209, at *2 (D.D.C. Oct. 13, 2021) ("[W]here plaintiffs challenge immigration decisions by bringing suit against federal officials in the District of Columbia, transfer to plaintiffs' home forum is generally warranted, unless the case poses a factual connection to this district.").  The defendants seek transfer of this case to the Western District of North Carolina, and the same government defendants have been granted such a transfer in many similar cases in this district.  *See, e.g.*, *McAfee*, 2019 WL 6051559, at *1; *Gyau*, 2018 WL 4964502, at *1; *Bourdon*, 235 F. Supp. 3d. at 303–04.  The mere fact that plaintiffs' counsel is not licensed to practice in North Carolina,[7] Pls.' Opp'n 6, has "little significance in the venue transfer analysis," *Doe v. Dep't of Army*, 99 F. Supp. 3d 159, 162 (D.D.C. 2015) (citation modified); *see Wolfram Alpha*, 490 F. Supp. 3d at 333 ("The location of counsel is not a consideration under [convenience of the parties].").

But, unlike many of the cases on which the parties rely, the plaintiffs' home district and the service center district differ.  This distinction is important because it could mean that the factors

---

[7] The plaintiffs' counsel—a Texas-barred attorney—does not appear to be licensed to practice in the District of Columbia but is admitted to practice before this Court.

of convenience and where the claim arose point to different fora. Courts considering transfer in similar cases have found the location of the USCIS Service Center to be significant. *See, e.g.*, *McAfee*, 2019 WL 6051559, at *2 ("[T]his controversy centers almost entirely on events that happened in the Central District of California."); *Bourdon*, 235 F. Supp. 3d at 305 ("Cases challenging the actions of local USCIS offices are frequently, and appropriately, transferred to the venue encompassing those local offices [because they arise there]."). And in cases where the plaintiffs' home district and the USCIS service center district are different, courts have generally transferred to the service center district, not the plaintiffs' home district. *See, e.g.*, *Ghaleb*, 2025 WL 2255083, at *1; *Melnattur*, 2021 WL 3722732, at *1; *Wei Lai*, 2021 WL 2073403, at *1; *Pengbo Li v. Miller*, No. 20-cv-1122, 2021 WL 1124541, at *6 (D.D.C. Mar. 24, 2021); *Ike v. USCIS*, No. 20-cv-1744, 2020 WL 7360214, at *1, *4 (D.D.C. Dec. 15, 2020); *EfficientIP, Inc. v. Cuccinelli*, No. 20-cv-1455, 2020 WL 6683068, at *2 (D.D.C. Nov. 12, 2020). *But see Patel v. Mayorkas*, No. 23-cv-1522, 2024 WL 1344451, at *2 (D.D.C. Mar. 28, 2024); *Wolfram Alpha*, 490 F. Supp. 3d at 340 (D.D.C. 2020) (transferring to plaintiff's home forum because plaintiff "cannot object to venue in [their] home forum" and "nearly all the impacts of [the USCIS action] and the outcome of [the] action will be felt most strongly in [plaintiff's home district]"). But this case is distinguishable from such cases because the plaintiffs were not interviewed in the Central District of California, nor is there much, if any, discovery in the Central District of California. *See* Pls.' Suppl. Br. 2–3.

The facts of this case are more closely aligned with those in *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324 (D.D.C. 2020). There, a technology company filed an I-129 petition supporting a worker's H-1B visa. *Id.* at 329. The plaintiff company and the worker resided in Illinois, while the USCIS California Service Center adjudicated and denied the petition. *Id.* The

court transferred the action to the plaintiffs' home district, rather than to the Central District of California, because the impact of the USCIS decision and the outcome of the action "[would] be felt most strongly [in the plaintiff's home district] and because the events giving rise to [p]laintiff's Petition and this action emerged from that district." *Id.* at 339. The court concluded that the private and public factors, along with the undeniable convenience for the plaintiffs to litigate in their home district, warranted transfer to that district. *Id.* at 340–41.

Here, too, a consideration of all the private factors supports transferring this case to the plaintiffs' home district, the Western District of North Carolina. "A plaintiff cannot reasonably claim to be inconvenienced by litigating in his home forum." *Wolfram Alpha*, 490 F. Supp. 3d at 333 (citation modified) (quoting *Aishat*, 288 F. Supp. 3d at 269). Because the Western District of North Carolina best accomplishes the goal of convenience for the parties after giving due consideration to the parties' forum preferences, the Court concludes that the private factors weigh in favor of transfer to the Western District of North Carolina. *See id.*

\* \* \*

In sum, the private and public interest factors weigh strongly in favor of transfer. This Court has a responsibility to "guard against the danger that a plaintiff might manufacture venue in the District of Columbia . . . [b]y naming high government officials as defendants" to bring a suit here "that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). The Western District of North Carolina "is the most appropriate venue for this action." *Wolfram Alpha*, 490 F. Supp. 3d at 340.

**CONCLUSION**

For the foregoing reasons, the Court grants the defendants' motion to transfer this case to the Western District of North Carolina and denies, without prejudice, the defendants' motion to dismiss. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

June 26, 2026